**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000520
10-APR-2019
08:25 AM**

NO. CAAP-18-0000520

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF B CHILDREN:
NH BORN ON 00/00/0000; AND
NN, BORN ON 00/00/0000

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 14-00180)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Chan and Hiraoka, JJ.)

Appellant-Father (**Father**) and Cross-Appellant-Mother (**Mother**) (collectively, **Parents**) appeal from the Order Terminating Parental Rights, filed on June 12, 2018, in the Family Court of the First Circuit (**Family Court**).[1] Father's and Mother's parental rights to their two children were terminated on June 12, 2018.

On appeal, Father contends the Family Court erred by finding that there was clear and convincing evidence that Father could not provide a safe family home due to methamphetamine abuse issues, as evidenced by missed urinalysis tests.

---

[1] The Honorable Paul T. Murakami presided.

On cross-appeal, Mother challenges Findings of Fact 7, 21, 24, 31, 32, 35, 54, 66, 67, 68, 75, 76, 77, 78, 80, and 85 and Conclusions of Law Nos. 7, 8, 9, and 10. Mother contends that: (1) she was denied the right to a hearing for admission to the Family Drug Court (**Drug Court**) program, thereby violating her Due Process rights; (2) only Father's parental rights could have been terminated while her parental rights were left intact while participating in services provided by the Drug Court program; and (3) there was not clear and convincing evidence she could not provide a safe family home.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced, the issues raised by the parties, and the relevant statutory and case law, we resolve Parents' points of error as follows:

Father contends that the Family Court erred by finding there was clear and convincing evidence he could not provide a safe family home based upon ten missed urinalysis tests and one positive test result in November 2015, in comparison to 64 negative urinalysis test results.

However, when the timing of Father's missed tests are viewed in conjunction with other evidence, such as visitation and custody of the children, Father's self-admitted substance abuse, and Father's refusal of treatment, there was clear and convincing evidence Father could not provide a safe family home, even with the assistance of a service plan, and that it was not reasonably foreseeable Father would become willing and able to provide a

safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years from the children's entry into foster care. See HRS 587A-33(a)(2) (2018); see also In re Doe, 95 Hawai'i 183, 194, 20 P.3d 616, 627 (2001).

The children were first placed into foster custody on October 8, 2014. Unsupervised visits with the children began in May 2016 and were ended in July 2016 after missed urinalysis tests, which are considered to be a positive drug test result. Father missed a urinalysis test on June 12, 2016. The children were returned to Parents under family supervision on November 11, 2016. However, after Petitioner-Appellee State of Hawai'i, Department of Human Services (**DHS**) received an anonymous report that Parents were using methamphetamine, had lost weight rapidly, and had been up all night fixing weird things, DHS requested that both Parents take a urinalysis test on March 3, 2017. Father (and Mother) failed to show up for testing that day. Custody with family supervision was revoked on March 7, 2017. The children were returned to Parents under family supervision again on April 3, 2017. Thereafter, Father was removed from random drug urinalysis testing for failing to show up for testing on April 20, May 7, May 10, and May 15, 2017. On May 16, 2017, when DHS checked on the children and received a vague response as to their whereabouts, DHS discovered Father had requested that a former resource caregiver pick up the children so they could live with the former resource caregiver. Mother reportedly had agreed to the arrangement, but had requested that the former resource

caregiver pick up the children in person to avoid traumatizing them, which the former resource caregiver agreed to do. A March 14, 2017 substance abuse assessment noted that Father reported that he used methamphetamine daily until November 2015. However, on February 21, 2018, at the trial on the Motion to Terminate Parental Rights, Father testified that he last used methamphetamine in 2017, and he did not believe he had a drug problem.

Also on February 21, 2018, Chaelae Primacio (**Primacio**), a DHS social worker, testified it was her opinion Father could not provide a safe family home and it was not reasonably foreseeable Father would become willing and able to provide a safe family home because of his failure to resolve his substance abuse issues in a timely manner.

During an April 3, 2018 assessment required for entry into the Family Drug Court program, Father admitted using methamphetamine that morning to wake up and that he had used marijuana sometime during the last month. Father stated during the assessment that he knew he was at risk of losing his children but he continued to use drugs, did not believe it was his fault, and would not agree to enter residential treatment. Father's entry into the Drug Court program was denied based upon Father's unwillingness to fully participate in the Drug Court program.

On June 12, 2018, Primacio testified that based on the facts presented, the April 3, 2018 assessment by the Drug Court, and Father's failure to enter into the Drug Court program, it was still DHS's position that Father was not currently willing and

able to provide a safe family home, even with the assistance of a service plan, and it was not reasonably foreseeable that Father would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time. The Family Court found Primacio credible. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation and internal quotation marks omitted).

Based on the record in this case, we conclude that the Family Court did not err in determining that there was clear and convincing evidence that, nearly four years after the children were first put into temporary foster custody due to, *inter alia*, the Parents' use of crystal methamphetamine, Father could not provide a safe family home, even with the assistance of a service plan, due to his ongoing use of methamphetamine. There was also clear and convincing evidence it was not reasonably foreseeable Father would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years after the children entered foster custody because his substance abuse issue was not resolved, he still did not believe he had a problem, and he refused treatment.

Mother

(1) Mother claims that she was denied the opportunity to be heard on a motion filed in the Drug Court. On April 6,

2018, a Motion for Admission of Mother to the Drug Court was filed by Roland Lee (**Lee**), the program manager for the Family Drug Court, and a hearing was scheduled for April 13, 2018. It appears that Mother, Father, and counsel for both parents, as well as DHS and the Guardian Ad Litem, were not served with the motion because a decision was made to instead withdraw the motion. The April 13, 2018 court minutes from the Drug Court indicate that only a Deputy Attorney General appeared for a hearing on the motion. An Order by the Presiding Judge of the Drug Court, filed on April 13, 2018, indicates the motion to admit Mother to the Drug Court was withdrawn. However, Lee testified in the termination proceedings that, *inter alia*, he informed Mother's counsel prior to the April 13, 2018 hearing date about the Motion for Admission and that the motion would be withdrawn. Mother's counsel inquired with Lee whether the hearing could continue so argument could be heard, but it appears that there was no continuance.

At the trial on the termination of parental rights, Lee testified he is a program manager with the Family Drug Court program and a Certified Substance Abuse Counselor. He does screening, intake, and assessment of any person or case potentially entering into the Drug Court. Lee stated that a biopsychosocial evaluation is an assessment the Drug Court looks at to assess the risk for failure and high need, treatment, assistance in sobriety, financial and housing support, relationships, and medical conditions. He conducted biopsychosocial evaluations for Parents on April 3, 2018. As

noted above, Father reported recent methamphetamine use, knew he was at risk of losing his children but continued to use drugs and believed it was not his fault. Lee recommended Father enter into residential treatment, but Father refused. Mother also reported recent methamphetamine use. Lee assessed Mother as willing to participate in treatment, but noted that she had not yet set up an appointment with a treatment facility. Lee testified that Parents were not accepted into the Drug Court program because the presiding judge determined that if Father did not want to enter into the Drug Court program, the judge had a low level of confidence that Mother could succeed in the program.

Mother does not dispute that the Family Court does not have jurisdiction over the proceedings in Drug Court. Mother does not challenge the Family Court's ruling that Drug Court is a specialty court with admission subject to the discretion of the Presiding Judge of the Drug Court. During closing argument, Mother's counsel acknowledged the Family Court's limitations with respect to the Drug Court's decision. The issue of whether Mother was improperly denied entry into the Drug Court program, or a hearing by the Drug Court prior to denial, are issues that must be addressed to the Drug Court. We cannot conclude that Mother's Due Process rights were violated by the Family Court under these circumstances.

(2 & 3) Mother contends that the Family Court could have terminated Father's parental rights, while leaving her rights intact, while she benefitted from services provided by the Drug Court, and that there was insufficient evidence adduced to

meet the clear and convincing standard to terminate her parental rights.

However, Mother requested an opportunity to participate in the Drug Court program only after her parental rights were terminated in February of 2018, roughly three and a half years after the children were first placed in foster care, by way of a motion for reconsideration of the termination order. It does not appear that Mother previously sought treatment for drug abuse. The Family Court set aside termination of Mother's parental rights to provide Mother with such an opportunity, but the Drug Court denied Mother admission to the program. As stated above, the Family Court had no authority over Mother's admission to the Drug Court, which is at the discretion of the Presiding Judge of the Drug Court. We conclude that the Family Court did not abuse its discretion in declining to wait until Mother gained admission to and completed the Drug Court program before again terminating her parental rights.

Like Father, Mother failed to show up for drug testing at various times, which impacted her visitation and custody of the children. Mother missed a urinalysis test on June 12, 2016, during a time period when Parents had unsupervised visits, which caused the unsupervised visits to end. Mother was a no-show for a March 3, 2017 urinalysis test after Parents purportedly used methamphetamine, which caused family supervision to be revoked. Mother also failed to show up for testing on April 20, May 7, May 10, and May 15, 2017, and was removed from the random urinalysis

testing program. Mother also agreed to surrender physical custody of the children to a former resource caregiver.

On February 21, 2018, Primacio testified it was her opinion that Mother could not provide a safe family home and it was not reasonably foreseeable Mother would become willing and able to provide a safe family home because of her failure to resolve her substance abuse issue in a timely manner.

Mother admitted to recently using methamphetamine in an April 3, 2018 assessment by Lee.

On June 12, 2018, Primacio testified that based on her prior testimony and the facts presented, the April 3, 2018 assessment, and Mother's failure to gain entry into the Drug Court program, it was DHS's position that Mother was not currently willing and able to provide a safe family home, even with the assistance of a service plan, and it was not reasonably foreseeable that Mother would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time.

We conclude that the Family Court did not err in determining that there was clear and convincing evidence that Mother could not provide a safe family home, even with the assistance of a service plan, due to her ongoing use of methamphetamine, and that it was not reasonably foreseeable Mother would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years after the children entered foster custody because her substance abuse issue

was not resolved nearly four years after the children first entered foster custody.

For these reasons, the Family Court's June 12, 2018 Order Terminating Parental Rights is affirmed.

DATED: Honolulu, Hawai'i, April 10, 2019.

On the briefs:

Herbert Y. Hamada,
for Father-Appellant.

Jacob G. Delaplane,
Court-Appointed Counsel,
for Mother-Cross Appellant.

Scott D. Boone,
Julio C. Herrera,
Erin K. Torres,
Deputy Attorneys General,
for Petitioner-Appellee
 Department of Human Services.

Presiding Judge

Associate Judge

Associate Judge